Aidan W. Butler (SBN 208399)
3550 Wilshire Boulevard, Suite 1924
Los Angeles, California 90010
Telephone: (213) 388-5168
Telecopier: (213) 388-5178
tocontactaidan@gmail.com

Attorneys for Plaintiff DAN RAINES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN RAINES, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SIMON'S AGENCY, INC., a California corporation; SIMON'S AGENCY, INC., a New York corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.: 2:20-cv-7551-JFW-JC**<br><br>**JOINT STIPULATION REGARDING PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND AWARD MONETARY SANCTIONS**<br><br>**[SUPPORTING DECLARATION, NOTICE OF MOTION, AND [PROPOSED] ORDER FILED CONCURRENTLY]**<br><br>**DATE: June 22, 2021**<br>**TIME: 9:30 am**<br>**COURTROOM: 750 (Temple)**<br><br>**Discovery Cut-Off: Aug. 16, 2021**<br>**Pretrial Conference: Oct. 1, 2021**<br>**Trial: Oct. 12, 2021** |

COME NOW plaintiff DAN RAINES and defendant SIMON'S AGENCY, INC., and, pursuant to Civil Local Rules 37-2 through 37-2.2, by and through their undersigned counsel, hereby provide a joint stipulation outlining issues in dispute in discovery in the above-captioned case, as follows:

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

I.    PLAINTIFF DAN RAINES'S INTRODUCTORY STATEMENT ...................................................................................... 4

II.   DEFENDANT SIMON'S AGENCY, INC.'S INTRODUCTORY STATEMENT ...................................................................................... 7

III.  ISSUES IN DISPUTE

   A. Are SAI's materials for FDCPA, RFDCPA, FRCA, and CCRAA compliance discoverable? .......................................................... 8

     1.   PLAINTIFF'S POSITION: THE COURT SHOULD COMPEL PRODUCTION OF DOCUMENTS RELATING TO SAI'S FDCPA, RFDCPA, FCRA, AND CCRAA COMPLIANCE PRACTICES ................................................................................ 10

     2.   DEFENDANT'S POSITION: THE COURT SHOULD DENY FURTHER PRODUCTION OF DOCUMENTS BECAUSE THE REQUESTS ARE OVERLY BROAD AND SAI COMPLIED IN PRODUCING THE RELEVANT DOCUMENTS IN RESPONSE TO THE REQUESTS ............................................................. 11

   B. Are documents relating to SAI's past FDCPA cases discoverable? ....... 12

     1.   PLAINTIFF'S POSITION: THE COURT SHOULD PRODUCE DOCUMENTS RELATING TO SAI'S PRIOR FDCPA/RFDCPA LITIGATION ................................................................................ 13

     2.   DEFENDANT'S POSITION: THE COURT SHOULD DENY FURTHER PRODUCTION OF DOCUMENTS BECAUSE THE REQUESTS ARE OVERLY BROAD AND UNDULY BURDENSOME, IRRELEVANT AND PREJUDICIAL ……. 14

   C. Are SAI's financial documents discoverable?

     1.   PLAINTIFF'S POSITION: COURT SHOULD COMPEL PRODUCTION OF DEFENDANT'S FINANCIAL DOCUMENTS ................................................................................ 16

     2.   DEFENDANT'S POSITION: DISCOVERY SHOULD NOT BE COMPELLED ON SAI'S NET WORTH AND FINANCIAL

**CONDITION ARE IRRELEVANT AND PREMATURE AS PLAINTIFF HAS NOT SET FORTH SUFFICIENT FACTS TO MAKE A CLAIM FOR PUNITIVE DAMAGES** ……………17

**I.   PLAINTIFF DAN RAINES'S INTRODUCTORY STATEMENT**

Plaintiff alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), California's comparable statute, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), as well as violations of the Fair Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agency's Act ("CCRAA"). A true and correct copy of Plaintiff's complaint is attached hereto as Exhibit "1."

The basic facts are that Plaintiff, who had blemishes on his credit, went to a credit repair organization to inquire about their services in March, 2016. This company, defendant ENRICH FINANCIAL, INC. – not a party to this motion – quoted Plaintiff an exorbitant $10,000.00 to remove several blemishes from his credit, and provided various documents for Plaintiff to sign, which as a matter of incontrovertible fact did not conform to the requirements of the Credit Repair Organizations Act ("CROA"). For instance, the contract failed to comply with 15 U.S.C. § 1679c(a), by omitting the following required language: "You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations"; "Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur"; and "The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact . . ."[1]

Plaintiff was not provided a copy of the contract, or any of the accompanying notices.

Since the contract did not conform to the requirements of CROA, it was void in

---

[1] The contract also failed to comply with other CROA provisions, including 15 U.S.C. § 1679c(b) which states, "The written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer, or any other written material provided to the consumer."

the first place, and not enforceable.[2]

Nevertheless, within 3 days of signing the contract, Plaintiff returned in person to EFI's offices and indicated that he did not want EFI to provide the services. Although CROA requires credit repair organizations such as EFI to provide notice to consumers that they have 3 days to cancel (15 U.S.C. §1679d(b)(4)), and to actually provide the consumer with a cancellation form to complete (15 U.S.C. §1679e), CROA does not actually require that consumers utilize that form to effectuate cancellation. Moreover, in this case, Plaintiff was not provided either a copy of his contract or copies of any of the required notices.

Despite the unenforceability of the contract and Plaintiff's cancellation, EFI debited $500.00 from Plaintiff's bank account several months after the cancellation, despite performing no services for Plaintiff at all. Defendant EFI ignored Plaintiff's attempts to dispute the billing and obtain a refund, and $500.00 seemed too modest a sum to interest a lawyer.

Then, in or around May, 2019, Plaintiff learned that SAI was reporting on his credit reports with Experian and Equifax that he owed a $9,500.00 debt to EFI based upon the non-compliant contract, which it – SAI – was attempting to collect.

Plaintiff repeatedly disputed the negative credit reporting and the alleged debt with SAI directly, both in repeated phone calls and directly, and with the consumer reporting agencies in writing. In response to Plaintiff's first dispute, SAI responded by mailing Plaintiff a complete copy of Plaintiff's contract with EFI. Plaintiff thus had in its possession – at least by that point – incontrovertible proof that the underlying contract was not compliant with CROA.

Each time Plaintiff disputed the negative reporting with a consumer reporting

---

[2]  15 U.S.C. §1679f( c) sets forth that "[a]ny contract for services which does not comply with the applicable provisions of this subchapter — (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person,"

agency, that agency in turn reached out to SAI and requested that SAI respond to Plaintiff's dispute. Each time, SAI – using a form called the ACDV form – confirmed the derogatory reporting.

Plaintiff's basic contentions as to SAI are that 1) SAI violated the FDCPA and the Rosenthal Act in various ways by attempting to collect a debt which was not owed, since the contract was void and unenforceable because it failed to comply with the CROA requirements, as identified above, and – even if it had been a valid, enforceable contract – Plaintiff had canceled it within the statutory cooling off period, and because EFI had not completed any work for Plaintiff in the first place; and 2) SAI violated the FCRA and the state CCRAA by failing to conduct a reasonable investigation into Plaintiff's disputes regarding its credit reporting, and by reporting derogatory credit information which SAI reasonably should have known was false (specifically, that a debt existed).

Defendant SAI has filed an answer which includes a bona fide error defense, and a similar defense that it implemented reasonable procedures to avoid violations of the applicable consumer protection laws. A true and correct copy of the answer is attached hereto as Exhibit "2."

Accordingly, Plaintiff served requests for production seeking, relevant to this motion, documents relating to Defendant's purported compliance procedures, as well as Plaintiff's past litigation involving FDCPA and Rosenthal Act cases, and Defendant's financials. A true and correct copy of Plaintiff requests for production are attached hereto as Exhibit "3." A true and correct copy of the corresponding responses is attached hereto as Exhibit "4."

In order to facilitate discovery and resolve concerns relating to private and/or proprietary documents, the parties submitted a stipulated protective order on or around April 9, 2021. This Court signed the Order on or around April 19, 2021 (Doc. No. 43). Nevertheless, despite the existence of the protective order, Defendant refuses to provide adequate responses to Plaintiff's very basic discovery requests.

**II. DEFENDANT SIMON'S AGENCY, INC.'S INTRODUCTORY**

## STATEMENT

In this action, Plaintiff seeks to invalidate a contract with EFI for credit repair services that he entered into more than five (5) years ago. After Plaintiff failed to pay the outstanding balance of $9,500 under the contract, EFI placed the account with SAI for collection (the "Debt"). SAI reasonably relied upon EFI's account records and representations that the Debt was accurate and owed by Plaintiff. In an effort to collect the Debt from Plaintiff, SAI communicated with Plaintiff via phone and mail and reported the Debt to the credit bureaus. Plaintiff then sued SAI under the FDCPA and FCRA (including the California equivalent statutes) for essentially collecting on a debt based on an allegedly voided contract.

Plaintiff initially claimed that he canceled the written contract within 3 days although it is undisputed that Plaintiff did not sign the Notice of Cancellation form. Instead, Plaintiff alleges that he verbally (either in person or over the phone) informed someone at EFI (that he cannot identify) that he wanted to cancel the signed contract. However, there is no record or tangible evidence of Plaintiff's purported in person visit or telephone call.

Plaintiff now argues that EFI's agreement for credit repair services allegedly violates CROA in failing to state certain disclosures, requesting payment in advance, misstating the cancelation period, etc. As such, Plaintiff claims that the Debt is not owed since the contract was invalid *ab initio*. To date, the contract between Plaintiff and EFI has **not** been deemed illegal or unenforceable.

Plaintiff also contends that EFI did not perform any credit repair services. However, Plaintiff's redress would involve a claim for breach of a contract which he refuses to recognize as binding or enforceable.

The root of Plaintiff's lawsuit clearly involves a dispute over the contract between Plaintiff and EFI that SAI took no part in and that occurred long before EFI retained SAI to collect the Debt from Plaintiff. Regardless, Plaintiff seeks to foist liability on SAI under the FCRA and FDCPA by taking the irrational position that SAI

is required to evaluate and adjudicate the legal merits of a disputed contract – to which it is not a party – before collecting or credit reporting a debt. There is no legal authority for imposing such an unreasonable and unrealistic duty upon SAI.

While EFI is a named defendant, this Joint Statement only addresses Plaintiff's discovery propounded upon SAI.

## III. ISSUES IN DISPUTE

### A. Are SAI's materials for FDCPA, RFDCPA, FCRA, and CCRAA compliance discoverable?

REQUEST FOR PRODUCTION NO. 3: All of YOUR employee handbooks from the year 2020.

*RESPONSE: Defendant objects to this Request on the grounds and to the extent this Request is vague and ambiguous as to "employee handbooks". Defendant further objects to this Request for Production on the grounds and to the extent the Request is unduly burdensome, not reasonably limited in scope and overly broad. Defendant further objects to this Request on the grounds it seeks documents which are not relevant or proportional to the needs of the case. Defendant further objects that this Request for Production seeks the production of material and documents that are confidential and proprietary.*

REQUEST FOR PRODUCTION NO. 4:   Any and all printed materials -- including but not limited to training manuals -- which YOU have used during the year 2020 in training YOUR employees.

*RESPONSE: Defendant objects to this Request for Production on the grounds and to the extent this Request is vague and ambiguous as to "training manuals". Defendant further objects to this Request for Production on the grounds and to the extent the Request is unduly burdensome, not reasonably limited in scope and overly broad. Defendant further objects to this Request on the grounds it seeks documents which are not relevant or proportional to the needs of the case. Defendant further objects that this Request for Production seeks the production of material and documents that are confidential and proprietary.*

{00152079;1}

REQUEST FOR PRODUCTION NO. 6: All DOCUMENTS reflecting, memorializing, summarizing, or describing YOUR policies and procedures regarding compliance with California's Rosenthal Fair Debt Collection Practices Act.

*RESPONSE: Defendant objects to this Request on the grounds that is vague and ambiguous as to "compliance with the FDCPA". This Request is also overly broad as to time and the scope of the FDCPA. Defendant further objects to this Request on the grounds that it seeks information which is not relevant or proportional to the needs of the case. Defendant also objects to the extent that it seeks confidential and proprietary information.*

REQUEST FOR PRODUCTION NO. 9: All DOCUMENTS which support YOUR third affirmative defense, bona fide error.

*RESPONSE: Without waiving and subject to the general and specific objections asserted above, Responding Party answers as follows: After a diligent search and reasonable inquiry, Defendant does not have any specific documents in response to this Request at this time. Discovery and investigation are still continuing that Responding Party reserves the right to amend or supplement this response as further information becomes available.*

REQUEST FOR PRODUCTION NO. 32: All DOCUMENTS reflecting, memorializing, summarizing, or describing YOUR policies and procedures regarding compliance with the FCRA.

*RESPONSE: Defendant objects to this Request on the grounds that is vague and ambiguous as to "compliance with the FCRA". This Request is also overly broad as to time and the scope of the FCRA. Defendant further objects to this Request on the grounds that it seeks information which is not relevant or proportional to the needs of the case. Defendant also objects to the extent that it seeks confidential and proprietary information.*

/ / /

/ / /

REQUEST FOR PRODUCTION NO. 33: All DOCUMENTS reflecting, memorializing, summarizing, or describing YOUR policies and procedures regarding compliance with the Consumer Credit Reporting Agencies Act.

*RESPONSE: Defendant objects to this Request on the grounds that is vague and ambiguous as to "compliance with the Consumer Credit Reporting Agencies Act". This Request is also overly broad as to time and the scope of the CCRAA. Defendant further objects to this Request on the grounds that it seeks information which is not relevant or proportional to the needs of the case. Defendant also objects to the extent that it seeks confidential and proprietary information.*

### 1. PLAINTIFF'S POSITION: THE COURT SHOULD COMPEL PRODUCTION OF DOCUMENTS RELATING TO SAI'S FDCPA/RFPDCPA COMPLIANCE PRACTICES.

Defendant SAI has alleged, as its third affirmative defense, "Bona Fide Error." The Answer alleges, "As a separate, affirmative defense, assuming arguendo that Defendant violated a statute alleged in the Complaint, which presupposition Defendant denies, such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (See Exhibit "2.")

Similarly, SAI alleges in as its sixth affirmative defense, "As a separate, affirmative defense, Defendant alleges that at all times alleged in the Complaint, Defendant maintained reasonable procedures created to prevent any type of intentional or negligent violations of the FDCPA and FCRA." (See Exhibit "2.")

It is SAI, then, that put its own compliance procedures directly in dispute; Plaintiff is entitled to discover document embodying and reflecting those procedures.

SAI's reference to "intent[]" is not random; intent is relevant to damages under the FDCPA; "intent" is the title of subparagraph "C" of 15 U.S.C. section 1692k, which deals with damages under the Act.

Moreover, subparagraph "B" of that section states, in pertinent part, "In determining the amount of liability in any action under subsection (a) of this section,

the court shall consider, among other relevant factors — (1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, *and the extent to which such noncompliance was intentional . . .*"

Similarly, punitive damages are available under the FCRA and the CCRAA if a plaintiff shows that a defendant "willfully" violated those statutes. See 15 U.S.C. § 1681n(a)(2); Cal. Civ. Code § 1785.31(a)(2)(B). "[W]illfulness reaches actions taken in 'reckless disregard of statutory duty,' in addition to actions 'known to violate the [statute].'" *Syed v. M-I, LLC*, 853 F.3d 492, 503 (9th Cir. 2017) (quoting *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007).)   SAI deviating from its own procedures – or in some cases, not having appropriate procedures – could support a finding of willfulness.

SAI has repeatedly raised its own "procedures" defensively.   It cannot therefore conceal the documentary evidence of such procedures.

**2. DEFENDANT'S POSITION: THE COURT SHOULD DENY FURTHER PRODUCTION OF DOCUMENTS BECAUSE THE REQUESTS ARE OVERLY BROAD AND SAI COMPLIED IN PRODUCING THE RELEVANT DOCUMENTS IN RESPONSE TO THE REQUESTS.**

SAI complied with the requests and produced the responsive documents: Standard Operating Procedure titled "E-Oscar" which is related to SAI's FDCPA/FCRA policies and SAI's Specific Policy and Required Procedures that it does not collect any amount which are not expressly authorized under the underlying agreement (SAI0077-81). Plaintiff apparently is seeking all of SAI's manuals, handbooks, policies and procedures regardless of whether it is relevant to the FDCPA and FCRA claims against SAI.

Here, Plaintiff's FDCPA and FCRA claims are predicated upon SAI allegedly collecting on a debt not owed, Plaintiff's discovery requests are not narrowly tailored to seek information these specific claims. As set forth above, the claims against SAI rely on the presupposition the contract is void because (1) Plaintiff canceled the contract with EFI and/or (2) the contract violates CROA. It has not yet been established

that the contract is invalid or unenforceable. Nonetheless, Plaintiff requested all handbooks, manuals, policies and procedures and multiple other documents regarding SAI's compliance of the FDCPA and FCRA in their entirety. Plaintiff, however, has not sued SAI under every provision of the FDCPA or FCRA. For instance, Plaintiff is not claiming that SAI violated the FDCPA by calling excessively or during in appropriate times. Plaintiff has not claimed that SAI made any threats or was harassing or abusive. Therefore, not all policies and procedures are relevant to the action thereby are not discoverable or should be produced in this case.

**B. Are documents relating to SAI's past FDCPA cases discoverable?**

REQUEST FOR PRODUCTION NO. 5: All DOCUMENTS -- including but not limited to pleadings and discovery -- relating to or prepared in connection with any lawsuits YOUR company has defended in which YOUR company was alleged to have violated the FDCPA.

*RESPONSE: Responding Party objects to this Request because it is irrelevant, overly broad as to time and jurisdiction, unduly burdensome, not calculated to lead to the discovery of admissible evidence and is intended to harass and oppress Defendant.*

*Responding Party also objects to this Request as it is not calculated to lead to discoverable or relevant information. See Nickander v. Hecker, 2009 U.S. Dist. LEXIS 122592 (N.D. Cal. Dec. 21, 2009) ("noting that courts are divided on the issue, but concluding that the better view is that a debt collector's noncompliance as to other consumers is irrelevant to the court's assessment of damages to be awarded to an individual plaintiff"); Peters v. Roberts Markel. PC, 2012 U.S. Dist. LEXIS 72928 (D. Haw. May 24, 2012) ("No matter what, relief under the FDCPA is available only to a person who sustains damage through a debt collector's violation of the FDCPA 'with respect to' that very person. 15 U.S.C. § 1692k(a). When a debt collector violates the FDCPA with respect to someone else, the FDCPA does not provide for claims by others."); and McCoullough v. Johnson, Rodenberg & Lauinger, 645 F. Supp.2d 917, 925 (D. Mont. 2009). As such, this Request seeks*

*information which has no probative value except to prejudice Defendant.*

*Additionally, F.R.E. 404 clearly states, "[E]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion. . ." The fact that Responding Party may have faced lawsuits in the past or may be involved in other lawsuits presently is clearly character evidence and nothing more and thus, is neither relevant nor admissible and is unduly burdensome in light of the claims asserted.*

*Without waiving and subject to the general and specific objections asserted, Responding Party answers as follows: Plaintiff's action is the only pending lawsuit against Defendant filed in California. The documents requested in this lawsuit are equally available to Propounding Party as the pleadings on file are a matter of public information and the discovery were served on Plaintiff.*

### 1. PLAINTIFF'S POSITION: THE COURT SHOULD PRODUCE DOCUMENTS RELATING TO SAI'S PRIOR FDCPA/RFDCPA LITIGATION.

"In assessing damages, a court must consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1467 (C.D. Cal. 1991).

Further, Rule of Evidence 404(b) provides, in pertinent part, that evidence of other wrongs or acts may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Finally, case law supports Plaintiff's right to this information. In *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 9 (N.D. Cal. 2006), the court stated that "information relating to whether or not defendants had claims filed against them, participated in litigation or arbitration, or received demand letters from attorneys about the legality of this particular type of collection effort under the FDCPA is relevant and must be disclosed."   See also *Evon v. Law Offices of Sidney Mickell*, 2010 WL 455476 (E.D. Cal. Feb. 3, 2010).

Moreover, the occurrence and nature of prior litigation would be directly relevant to intent; see 15 U.S.C. §§1692k(b) - ( c) (quoted above).

### 2. DEFENDANT'S POSITION: THE COURT SHOULD DENY FURTHER PRODUCTION OF DOCUMENTS BECAUSE THE REQUESTS ARE OVERLY BROAD AND UNDULY BURDENSOME, IRRELEVANT AND PREJUDICIAL.

Plaintiff's request for all pleadings and discovery in unrelated litigation is objectionable on the grounds that it is irrelevant, overly broad as to time and jurisdiction, unduly burdensome, not calculated to lead to the discovery of admissible evidence and is harassing and oppressive to Defendant. Regardless, SAI responded in full by identifying that the Plaintiff's action is the only pending FDCPA and FCRA lawsuit against Defendant filed in California. Since the RFDCPA and CCRAA are California statutes, there are no other lawsuits filed out-of-state that assert such a claim. In addition, SAI produced a list of lawsuits filed within the last 3 years where a claim under the FDCPA or FCRA was brought against SAI. However, SAI objects to producing any pleadings or discovery documents in those lawsuits on the grounds previously stated, and on the grounds that the documents may be confidential and subject to a protective order.

Here, Plaintiff's claim involves a debt based on contract with EFI which Plaintiff claims violates CROA. Aside from Plaintiff's action, SAI has no other FDCPA or FCRA lawsuits on EFI collection accounts, credit repair debts, or contracts that allegedly violate CROA. This discovery request at issue is not narrowly tailored and a further response is not warranted because it does seek "information relating to whether or not defendants had claims filed against them, participated in litigation or arbitration, or received demand letters from attorneys about the legality of this *particular type of collection effort under the FDCPA*." *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 616 (N.D. Cal. 2006) (Emphasis added). There is nothing specific about this discovery request. Plaintiff made a wide request for documents in connection with <u>any</u> lawsuits or claims where SAI defended allegations of <u>any</u> violation of the FDCPA at <u>any</u> time

and in <u>any</u> jurisdiction. Thus, this request seeks information which has no probative value except to prejudice Defendant.

**C. Are SAI's financial documents discoverable?**

REQUEST FOR PRODUCTION NO. 15: All financial reports and statements to investors during the last two years relating to any debt collection company owned, in full or in part, by YOU.

*RESPONSE: Defendant objects to this Request as vague, and ambiguous as phrased. Defendant also objects to this Request as it is not relevant to the subject matter of this individual action (not a class action) as framed by the pleadings and not reasonably calculated to lead to the discovery of admissible evidence or facilitate a resolution of the case. Defendant further objects on the grounds that this request seeks confidential financial information of Defendant.*

REQUEST FOR PRODUCTION NO. 16: All of YOUR income tax returns filed during the last two years by any debt collection company owned in full or in part by YOU which attempted to collect any debt from the Plaintiff herein.

*RESPONSE: Defendant objects to this Request as vague, and ambiguous as phrased. Defendant also objects to this Request as it is not relevant to the subject matter of this individual action (not a class action) as framed by the pleadings and not reasonably calculated to lead to the discovery of admissible evidence or facilitate a resolution of the case. Defendant further objects on the grounds that this request seeks confidential financial information of Defendant.*

REQUEST FOR PRODUCTION NO. 26: All of YOUR quarterly profit and loss statements for the past three years.

*RESPONSE: Defendant objects to this Request as vague, and ambiguous as phrased. Defendant also objects to this Request as it is not relevant to the subject matter of this individual action (not a class action) as framed by the pleadings and not reasonably calculated to lead to the discovery of admissible evidence or facilitate a resolution of the case. Defendant further objects on the grounds that this request seeks confidential financial information of Defendant.*

1. **PLAINTIFF'S POSITION: THE COURT SHOULD COMPEL PRODUCTION OF DEFENDANT'S FINANCIAL DOCUMENTS.**

As pointed out by Judge Otero in *Southern California Housing v. Krug*, 2006 U.S. Dist. LEXIS 65330, *11 (C.D. Cal. 2006), "When a punitive damages claim has been asserted, a majority of federal courts permit pretrial discovery of financial information about defendants without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.," citing *inter alia, Baker v. CNA Ins. Co.,* 123 F.R.D. 322, 330 (D. Mont. 1988). In this case, Plaintiff has raised claims which typically entitled prevailing plaintiffs to punitive damages – including willful violations of the FCRA and CCRAA, which – as discussed above – allow punitive damages. See 15 U.S.C. § 1681n(a)(2); Cal. Civ. Code § 1785.31(a)(2)(B).

Some particulars FDCPA cases in which courts have allowed discovery to encompass tax returns and profits and loss statements to determine net worth include *Armamburu v. Healthcare Fin. Services. Inc*. 2007 WL 2020181 (E.D.N.Y. July 6, 2007), *Mailloux v. Arrow Financial Services, LLC*, 2002 U.S. Dist. LEXIS 3314 (E.D.N.Y. Feb. 21, 2002) – specifically referring to tax returns; and *Yancey v. Hooten*, 180 F.R.D. 203 (D. Conn. 1998), granting a motion to compel tax returns, among other things, stating in part, "The court is not persuaded by the defendant's argument that the Tax Code's designation of tax information as confidential somehow obviates the need for the defendant to satisfy the requirements of Rule 26( c)." (Id. at 215.)

Similarly, in *Todd v. AT&T, Corp.*, 2017 WL 1398271 (N.D. Cal. Apr. 19, 2017) the court ordered production of documents showing defendant's current net worth.

/ / /

/ / /

/ / /

/ / /

2. **DEFENDANT'S POSITION: DISCOVERY SHOULD NOT BE COMPELLED ON SAI'S NET WORTH AND FINANCIAL CONDITION ARE IRRELEVANT AND PREMATURE AS PLAINTIFF HAS NOT SET FORTH SUFFICIENT FACTS TO**

## MAKE A CLAIM FOR PUNITIVE DAMAGES.

Plaintiff's discovery into SAI's financial condition or net worth is not relevant to punitive damages under the CCRAA. Under Cal. Civ. Code §1785.31(a)(2)(B), the Plaintiff could recover "[i]n the case of a willful violation: . . . (B) Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($,000) for each violation as the Court deems proper." Since a claim for punitive damages under the CCRAA are based on the number of violations and whether each violation was "willful" as opposed to a defendant's net worth, SAI's net worth is not relevant to Plaintiff's request for punitive damages. *Caccamise v. Credit One Bank, N.A., et al.,* 2019 WL 1903219. *5 (S.D. Cal. Apr.. 26, 2019). Therefore, Plaintiff's motion to compel production against SAI should be denied.

With regard to Plaintiff's claim for punitive damages for a willful violation of the FCRA, he has not alleged sufficient facts to claim punitive damages against SAI. As stated above, the basis for Plaintiff's claims against SAI arise from allegations that the Debt for EFI's credit repair services is not owed because of Plaintiff belief that the contract was canceled or void. At this time, there has been no factual or legal determination that the contract between Plaintiff and EFI has been rendered invalid or unenforceable. Therefore, Plaintiff's punitive damages claim is premature.

Although the party requesting the discovery generally does not need to establish a prima facie case on the issue of punitive damages before obtaining discovery of the other party's financial statements and tax returns, the requesting party should show the claim for punitive damages is not spurious. Otherwise, any FCRA claim automatically opens the door on discovery of a defendant's net worth regardless of whether the claim for punitive damages is legitimate one. There is no justifiable basis to compel discovery into SAI's net worth and/or financial condition at this stage of the litigation.

Based on the foregoing, Plaintiff's motion to compel and any request for monetary sanctions should be denied as SAI responded; its objections were substantially justified, and an award of monetary sanctions would be unjust.

DATED: May 28, 2021          Respectfully submitted,

By:    */S/ Aidan W. Butler*
Aidan W. Butler
Attorney for Plaintiff7
DAN RAINES

DATED: May 28, 2021          CARLSON & MESSER

By:    */S/ J. Grace Felipe*
J. Grace Felipe
Attorneys for Defendant
SIMON'S AGENCY, INC.

{00152079;1}
2:20-cv-7551-JFW-JC      18      JOINT STIPULATION