Aidan W. Butler (SBN 208399)
3550 Wilshire Boulevard, Suite 1924
Los Angeles, California 90010
Telephone:  (213) 388-5168
Telecopier: (213) 388-5178
tocontactaidan@gmail.com

Attorneys for Plaintiff DAN RAINES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DAN RAINES, an individual,

        Plaintiff,

        vs.

ENRICH FINANCIAL, INC., a California corporation; SIMON'S AGENCY, INC., a New York corporation; and DOES 1 through 10, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.: 2:20-cv-07551-JFW-JC**

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

**[SUPPORTING DECLARATIONS, STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW, PROPOSED ORDER FILED CONCURRENTLY]**

**DATE: September 13, 2021**
**TIME: 1:30 pm**
**COURTROOM: 7A**

## TO ALL PARTIES AND THEIR COUNSEL OF RECORD HEREIN:

**PLEASE TAKE NOTICE** that on September 13, 2021, at 1:30 pm or as soon thereafter as this matter may be heard in courtroom 7A of the above-entitled Court located at 350 W. 1st Street, Los Angeles, CA 90012,[1] plaintiff DAN RAINES will and hereby does move the Court for partial summary judgment pursuant to Fed R.

---

[1]    The Court uses the following Zoom webinar credentials: Telephone: (669) 254-5252 Webinar ID: 161 666 0981 Passcode: 537770

Civ. Procedure 56 as to defendant ENRICH FINANCIAL, INC. ("Enrich"), as to the following issues:

1) Defendant Enrich violated the Credit Repair Organizations Act ("CROA") by failing to include language required by 15 U.S.C. § 1679c(a) in its statement provided to Plaintiff;

2) Defendant Enrich violated the Credit Repair Organizations Act by failing to provide Plaintiff with a notice that complied with the formal requirements of 15 U.S.C. § 1679c(b);

3) Defendant Enrich violated the Credit Repair Organizations Act by 15 U.S.C. §§1679d(a), 1679d(b), and 1679e(a);

4) Defendant Enrich violated the Credit Repair Organizations Act by failing to provide a full and detailed description of the services to be provided, or estimates of the date by which such services would be completed, or estimates of the length of the period necessary to perform such services, as required by 15 U.S.C. §1679d(b);

5) Given the foregoing violations of CROA at 1) through 4), the contract was void 15 U.S.C. sections 1679f(a);

6) Therefore, defendant Enrich violated the Credit Repair Organizations Act (15 U.S.C. sections 1679f(b)) by collecting $500.00 from Plaintiff based upon the void contract, and by hiring a collection company blemish Plaintiff's credit, and collect an additional $9,500.00 purportedly due under the void contract, despite the fact that the contract was void and unenforceable; and

7) Defendant Enrich violated the Credit Repair Organizations Act section 15 U.S.C. §1679e( c) by failing to provide Plaintiff a copy of the contract and other materials Enrich had Plaintiff sign.

Plaintiff's motion will be based upon this notice, the attached Memorandum of Points and Authorities, the supporting declarations and evidence, the supporting Separate Statement of Undisputed Facts, [proposed] order, the Court's file in this matter, and such argument and evidence as may be presented at the time of the

hearing.

This motion is filed following the conference of counsel pursuant to LR 7-3, which took place formally on two separate occasions – August 24, 2020, and February 24, 2021 (ECF No. 36).

DATED: August 6, 2021                       Respectfully submitted,


                                   By:     _*/S/ Aidan W. Butler*_____
                                           Aidan W. Butler
                                           Attorney for Plaintiff
                                           DAN RAINES

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................**iv**

**TABLE OF AUTHORITIES** ...............................................................................**v**

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................**1**

**I. STATEMENT OF FACTS** ...............................................................................**1**

**II. THE APPLICABLE STANDARD** .................................................................**2**

**III. ARGUMENT: DEFENDANT ENRICH HAS VIOLATED THE CROA IN AT LEAST SIX DIFFERENT WAYS**..................................................**3**

**A. ENRICH VIOLATED SECTION 1679c(a)**.................................................**4**

**B. ENRICH VIOLATED  15 U.S.C. § 1679c(b)** ...........................................**5**

**C. ENRICH VIOLATED 15 U.S.C. §§1679d(a), 1679d(b)(4), 1679e(a)**...................................................................................**6**

**D.  ENRICH VIOLATED 15 U.S.C. §1679d(b)** ...........................................**7**

**E. ENRICH VIOLATED 15 U.S.C. §1679e( c)** ............................................**9**

**F. ENRICH VIOLATED 15 U.S.C. §1679f( c)** ............................................**9**

**IV. CONCLUSION** .............................................................................................**10**

# TABLE OF AUTHORITIES

**CASE LAW**

*American International Group, Inc. v. American International Bank*,
926 F.2d 829, 833 (9th Cir.1991) ....................................................................2

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........................................................2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........................................................2

*Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir.1999) ..........................2

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) ..................................................2

**STATUTES**

Federal Rules of Civil Procedure 56 ........................................................................ 2

15 U.S.C. § 1679.......................................................................................................3

15 U.S.C. § 1679c(a)...........................................................................................2, 4

15. U.S.C. § 1679c(b) .........................................................................................2, 5

15 U.S.C. §§1679d(a), 1679e(a)..............................................................................5

15 U.S.C. §1679d(b) ................................................................................................6

15 U.S.C. §1679e( c) ................................................................................................9

15 U.S.C. §1679f( c) .................................................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF FACTS.

Defendant ENRICH FINANCIAL, INC. (hereinafter "Enrich") states on its website, "Enrich Financial is a team of skilled credit repair specialists and law experts led by Mr. Arian Eghbali."  In its contract with Plaintiff, Enrich repeatedly refers to itself as the "Credit Repair Specialist," and states in the final paragraph of its "Official Agreement" with Plaintiff, "Credit Repair Specialist shall provide all services in strict accordance with the applicable laws and regulations related to credit repair services."   Enrich is a credit repair organization.  (SUF 1.)

Plaintiff entered into a credit repair contract with Enrich March 17, 2016. (SUF 2.)

Enrich provided Plaintiff with a statement that failed to include all of the text required by 15 U.S.C. § 1679c(a).  (SUF 3.)

Further, the same statement that failed to meet the formal requirements of 15 U.S.C. §1679c(b).  (SUF 5).

Enrich's contract with Plaintiff included language indicating that certain charges were "NON REFUNDABLE" and which Plaintiff "may not cancel"; and that "CLIENT understands that they [sic] may not cancel the original amount agreed to pay, due to The Credit Repair Specialist [sic] *immediate action* towards the CLIENT's credit repair."   (SUF 7.)

The contract between Enrich and Plaintiff did not include a "full and detailed" description of the services to be provided, or estimates of the date by which such services would be completed, or the length of time necessary to perform such services, as required by CROA.  (SUF 9.)

Plaintiff was not given copies of any of the documents he signed. (SUF 11.)

Enrich took $500.00 from Plaintiff based upon the contract described above. (SUF 14.)

Subsequent facts relating to Plaintiff's FCRA and FDCPA claims against SAI,

damages, etc., are not relevant to this motion, but will be introduced at trial on October 12, 2021.

## II. THE APPLICABLE STANDARD.

Summary judgment is appropriate where a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."" Fed.R.Civ.P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. Id. at 250, 106 S.Ct. 2505; Fed.R.Civ.P. 56(c), (e); see also *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

When the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir.1991) (Kozinski, dissenting). An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir.1999).

### III. ARGUMENT:
### DEFENDANT ENRICH HAS VIOLATED THE CROA
### IN AT LEAST SIX DIFFERENT WAYS.

Congress made the following findings (15 U.S.C. §1679(a)):

"(1) Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.

"(2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those of limited economic means and who are inexperienced in credit matters."

The purpose of the Credit Repair Organizations Act, therefore, is:

"(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

"(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."

Although the "Official Agreement" between Enrich and Plaintiff states that "Credit Repair Specialist shall provide all services in strict accordance with the applicable laws and regulations related to credit repair services" (Ex. "3," page 3 of 10, SAI0010, sentence 2, final paragraph), the written materials themselves incontrovertibly demonstrate at least four distinct violations of the CROA. Undisputed facts establish at least two others.

## A. ENRICH VIOLATED SECTION 1679c(a).

CROA states at 15 U.S.C. § 1679c(a), "Any credit repair organization shall provide any consumer with the following written statement before any contract or agreement between the consumer and the credit repair organization is executed . . ."

Subparagraph (a) sets forth – in quotation marks – several paragraphs which constitute "the written statement" to be provided.   Those include, among others:

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations";

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur";

And:

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact For more information contact: [¶] The Public Reference Branch [¶] Federal Trade Commission [¶] Washington, D.C. 20580."

The three paragraphs set forth above were not included in the statement provided to Plaintiff by EFI.   (See Exhibit 3, page 2 of 10, SAI0009.)   While other portions of the statement provided by 1679c(a) were also omitted, those entire paragraphs were left out.   Some of the text of 1679c(a) was included – reflecting Enrich's awareness of the statute – but the portions of 1679c(a) which were included were re-ordered, and condensed into a single, less readable paragraph.

Quoting the statutory language exactly should pose no challenge; copying by

sight, or just cutting and pasting from an online rendition of the code would obviously be possible.

In this case, Enrich's notice did not harmlessly simplify the various paragraphs of 1679c(a), or use synonymous language which provided equivalent meaning. Enrich entirely omitted two paragraphs which would enhance consumers' knowledge of their rights in regard to the type of organization which they would be considering forming a contractual relationship at the time the notice was to be provided.  Enrich also omitted a paragraph which informs consumers about the duties of credit reporting agencies; having such knowledge could incline consumers to dealing with the reporting agencies directly, rather than through an expensive intermediary.

### B. ENRICH VIOLATED  15 U.S.C. § 1679c(b).

CROA states at 1679c(b), "The written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer, or any other written material provided to the consumer."

Enrich's notices under 1679c(a), in addition to omitting required language, was not part of a "separate document from any written contract or other agreement . . . or any other written material . . .."   The condensed version of the 1679c(a) notice provided by Enrich was on page 2 of 10 of Enrich's contract materials.

Further, on the same page as the portions of the 1679c(a) notice which Enrich did include, Enrich also set forth language by which the consumer – referred to as "client" – made certain warranties to Enrich.  The next paragraph purports to require the consumer to indemnify Enrich "against any claims made . . ."

The portions of the 1679c(a) statement which Enrich did include were part a larger contract and surrounded by legal language which imposed obligations on the consumer.  Thus Enrich violated 1679c(b).

**C. ENRICH VIOLATED 15 U.S.C. §§1679d(a), 1679d(b)(4), 1679e(a).**

CROA provides, at section 1679d(a), "No services may be provided by any credit repair organization for any consumer— (1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) has been signed by the consumer; or (2) before the end of the 3-business-day period beginning on the date the contract is signed."

Enrich's contract admits that it violated section 1679d(a)(2) on page 8 of 10, entitled "Credit Card / Refund Policy," by stating, "this charge is final and strictly a NON REFUNDABLE purchase . . . and Service has been rendered already!"

Similar language is found on page 3 of 10, entitled "Official Agreement," in the third sentence of the fourth paragraph.  That sentence reads, "The CLIENT understands that they [sic] may not cancel the original amount agreed to pay, due to The Credit Repair Specialist [sic] *immediate action* towards the CLIENT's credit repair."   (Italics emphatic.)

Section 1679d(a)(2)'s prohibition of rendering services prior to the end of the three day period is reinforced by section 1679d(b)(4), which requires the conspicuous inclusion of the following statement in bold type, "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract."

Section 1679d(a)(2) is further reinforced by section 1679e(a), which states, "Any consumer may cancel any contract with any credit repair organization *without penalty or obligation* by notifying the credit repair organization of the consumer's intention to do so at any time before midnight of the 3rd business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed or would, but for this subsection, become enforceable against the parties."  (Italics emphatic.)

Enrich's language quoted above – in addition to admitting violations of 1679d(a)(2) – contradicts, overshadows and negates the notice of 1679d(b)(4), and

the rights provided for in 1679e(a).

### D.  ENRICH VIOLATED 15 U.S.C. §1679d(b).

EFI further violated CROA's requirements set forth in 1679e(d), by failing to provide "a full and detailed description of the services to be performed by the credit repair organization for the consumer, including— (A) all guarantees of performance; and (B) an estimate of— (i) the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete; or (ii) the length of the period necessary to perform such services . . ."

Page 3 of 10 of Exhibit "3" (SAI00010) is a page entitled "Official Agreement."  This document states that "[t]he terms of this agreement shall begin on 3/17/2016 and terminate on, 3/17/2017 unless earlier terminated or extended."

The second paragraph of the "Official Agreement" is identical to the third paragraph of page 2 of 10, "Consumer Credit File Rights Under State and Federal Law."  It purports to require the consumer to indemnify the credit repair company "against any claims made . . ."

The third paragraph states that "CLIENT agrees to pay a fee total of $10,000 dollars [sic] for credit repair service."   It does not provide a detailed description of what will be "repaired," though.  The contract vaguely describes "an initial first work fee of $500 for an individual to be billed after the setup and analysis has been fully performed."   Part of this "analysis" apparently consists of the following: "The Credit Repair Specialist Program will audit the Client's credit reports and develop a plan to delete, correct, or change inaccurate, unverifiable, and obsolete items under current federal and state law during this contact."

It is not clear what happens if that "audit" reveals that there are no "inaccurate, unverifiable," or "obsolete items."

Paragraph four of the the Official Agreement continues, "[a]fter each month services [sic] have been fully performed, client will be billed" – in the amount of

$500.00.  It is not clear what "each month services" would consist of, however.

Instead of providing "a full and detailed description of the services to be performed by the credit repair organization for the consumer," the Official Agreement consists of nebulous generalities: "the monthly fee includes the continuing analysis/audit of up to three credit bureau reports all correspondence [sic] associated with the credit improvement process, the review for changes requested by the Client . . . phone consultations with the client and continuing planning and creation of documents for the purpose of credit report improvement."  By failing to provide an estimate of how long such "continuing analysis," "continuing planning" and "creation of documents" might take, it becomes impossible for the consumer to evaluate how fair the fee is.  More problematically, though, the Official Agreement essentially commits the consumer to pay $500.00 monthly regardless of what the consumer's actual situation is; Enrich is determined to find some vague justification for the billing.

Just as problematically, it is unclear how $500 per month for one year – the term set forth in the first paragraph – equals $10,000.00, the "fee total."  Of course it does not; 12 times $500 equals $6,000.00, not $10,000.00.

In short, $500.00 was due for "the setup and analysis," but apart from that, there is no meaningful description of the services to be performed, much less the "full and detailed" one required by the statute.  Moreover, there are no estimates of how long any particular services will take, or the length of time necessary for such services.  Contradicting the one year term in the first paragraph, the third paragraph states ominously, "[t]his will continue until Client cancels service."

Congress's purpose in enacting CROA was "(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."  (15 U.S.C. §1679.)  Far from

providing clarity and actual information, Enrich's contract offer only obfuscation, redundancy, self-contradiction, and outright gibberish such as, "This agreement shall be subject to the general terms and conditions related to the credit repair service provided by Credit Repair Specialist . . . . Credit Repair Specialist may terminate this agreement at any time, if in its sole discretion, the CREDIT is or is about to fail to comply with the general terms and conditions relating to the credit repair services, laws, and regulations."[2]

### E. ENRICH VIOLATED 15 U.S.C. §1679e( c).

CROA requires that "[a]ny consumer who enters into any contract with any credit repair organization shall be given, by the organization (1) a copy of the completed contract and the disclosure statement required under section 1679c of this title; and (2) a copy of any other document the credit repair organization requires the consumer to sign."

In this case, Plaintiff was not provided copies of any of documents he was required to sign.   As set forth in his declaration, Plaintiff only obtained a copy of Enrich's contract documents after sending a written dispute to the debt collector, in August, 2019 – more than three years after the documents were signed.

### F. ENRICH VIOLATED 15 U.S.C. §1679f( c).

CROA sets forth at section 1679f( c) that  "[a]ny contract for services which does not comply with the applicable provisions of this subchapter — (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person."

As argued above, the contract between Plaintiff and Enrich did not comply with the CROA.   It was void.  (15 U.S.C. §1679f( c).)  Therefore, even if Enrich or

---

[2]     Nowhere in the ten pages of materials prepared by Enrich is there a document or provision entitled "Terms and Conditions."

its collection agency, defendant SIMON'S AGENCY, INC. ("SAI"), were to persuasively argue that Plaintiff somehow failed to cancel the contract, such an argument would be immaterial.  A void contract does not need to be cancelled.

Yet Enrich – as shown in its own invoice – took $500.00 from RAINES based upon the contract on or around May 16, 2016.

Further, Enrich then retained a debt collector – SAI – to attempt to enforce the $9,500.00 "debt" stemming from Enrich's void contract by both trying to collect the $9,500.00, and by reporting the $9,500.00 "debt" as delinquent and owed to the major reporting agencies.

Therefore, Enrich (and, as argued separately in similar motion filed in the related case 2:20-cv-04036-JFW-JC, SAI) violated section 1679( c), which prohibits enforcement by courts "or any other person."[3]

## IV. CONCLUSION.

For the foregoing reasons, plaintiff DAN RAINES respectfully requests that the Court issue partial summary judgment against defendant ENRICH FINANCIAL, INC., as set forth above, reserving other issues for trial.

DATED: August 6, 2021                              Respectfully submitted,


                                           By:      _/S/ Aidan W. Butler_____
                                                   Aidan W. Butler
                                                   Attorney for Plaintiff
                                                   DAN RAINES

---

[3]      Based upon identical facts, Plaintiff will move for partial summary
        judgment against SIMON'S AGENCY, INC., in the related case,
        2:20-cv-03046-JFW-JC, under the same statute.