**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

Case No.   **CV 20-7551-JFW(JCx)**                         Date:  September 17, 2021

Title:       Dan Raines -*v*- Enrich Financial, Inc., et al.

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

**Shannon Reilly**                                **None Present**
**Courtroom Deputy**                              **Court Reporter**

**ATTORNEYS PRESENT FOR PLAINTIFFS:**       **ATTORNEYS PRESENT FOR DEFENDANTS:**
None                                                  None

**PROCEEDINGS (IN CHAMBERS):**       **ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [filed 8/16/21; Docket No. 54]**

On August 16, 2021, Plaintiff Dan Raines ("Plaintiff") filed a Motion for Partial Summary Judgment ("Motion").  On August 23, 2021, Defendant Enrich Financial, Inc. ("Enrich") filed its Opposition.  On August 30, 2021, Plaintiff filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's September 13, 2021 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.      Factual and Procedural Background[1]**

        **A.      Factual Background**

On March 17, 2016, Plaintiff visited Enrich's office in Tarzana, California, where Enrich does business as "The Credit Repair Specialist," and met with one of Enrich's employees and discussed whether Enrich could assist Plaintiff improve his credit reports.  During this meeting, Plaintiff was advised by Enrich's employee that Enrich could remove various derogatory marks from his credit

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

Initials of Deputy Clerk __sr__

reports for a flat fee of $10,000.  Based on these discussions, Plaintiff entered into a contract for credit repair services with Enrich on March 17, 2016 (the "Agreement").[2]  Declaration of Plaintiff Dan Raines in Support of Motion for Partial Summary Judgment, Exh. 3 (Docket No. 56-3).  Pursuant to the terms of the Agreement, Plaintiff agreed to pay Enrich $10,000 in exchange for Enrich auditing Plaintiff's "credit reports and develop[ing] a plan to delete, correct, or change inaccurate, unverifiable, and obsolete items under current federal and state law" from March 17, 2016 through March 17, 2017.[3]  In addition, the Agreement provides that the fee "includes the continuing analysis/audit of up to three credit bureau reports all correspondence associated with the credit improvement process, the review for changes requested by [Plaintiff] to [Plaintiff's] credit reports as a result fo contacts made on [Plaintiff's] behalf with each applicable credit bureau, creditor or public record holder, phone consultations with [Plaintiff] and the continuing planning and creation of documents for the purpose of credit report improvement."

According to Plaintiff, he returned to Enrich's office two days later and canceled the Agreement by completing and signing the "**NOTICE OF CANCELLATION**" form which he left with Enrich's receptionist.  Approximately two months later, Plaintiff discovered that Enrich had cashed his post-dated check in the amount of $500 that Plaintiff had provided to Enrich on March 17, 2016.  Although Plaintiff made multiple attempts to contact Enrich in order to demand the return of his $500, Plaintiff was given "the run-around" by Enrich employees each time he called and Plaintiff eventually "gave up" on his efforts to recoup the $500 from Enrich.

In approximately June 2019, Plaintiff learned that a third party collection agency, Simon's Agency, Inc. ("SAI"), was attempting to collect the $9,500 he allegedly owed to Enrich under the Agreement, and that SAI had reported this alleged debt to Experian and Equifax.  On June 22, 2019, Plaintiff sent a dispute letter to SAI.  On August 20, 2019, SAI responded to Plaintiff, claiming that he owed $9,500 under the terms of the Agreement which SAI provided to Plaintiff.  Plaintiff also sent dispute letters to Experian and Equifax.  The alleged debt remained on Plaintiff's credit report until approximately December 2020.

## B.    Procedural History

On August 20, 2020, Plaintiff filed a Complaint against Enrich and SAI.  In his Complaint, Plaintiff alleged claims for relief for: (1) violation of the Credit Repair Organizations Act ("CROA")

---

[2]  Plaintiff signed several pages of the Agreement, specifically pages two, three, four, six, seven, and eight.  The Agreement was not signed by Enrich, and there does not appear to be a signature line for Enrich on any page of the Agreement.

[3]  The Agreement, which consists of ten page, is difficult to understand and navigate because it contains numerous grammatical and other errors, contradictory provisions, and the various provisions of the Agreement are not numbered or organized in any way beyond several pages of the Agreement containing titles, including page two entitled "CONSUMER CREDIT FILE RIGHTS UNDER STATE AND FEDERAL LAW," page three entitled "OFFICIAL AGREEMENT," page four entitled "AUTHORIZATION FOR SPECIAL POWER OF ATTORNEY," page five entitled **NOTICE OF CANCELLATION**, page seven entitled "Client Information," page eight entitled "Credit Card/Refund policy," and "**Credit Card Payment Authorization Form**."

Initials of Deputy Clerk  _sr_

(alleged against Enrich); (2) violations of the Fair Credit Reporting Act ("FCRA") (alleged against SAI); (3) violations of the Consumer Credit Reporting Agencies Act ("CCRAA") (alleged against SAI); (4) violations of the Fair Debt Collection Practices Act ("FDCPA") (alleged against SAI); and (5) violations of California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") (alleged against SAI).[4]  Plaintiff alleges that Enrich failed to comply with multiple provisions of the CROA and, as a result, the Agreement was void and unenforceable and the $9,500 debt was invalid.  On October 30, 2020, Enrich filed its Answer.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial.  *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").  In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case."  *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson*, 477 U.S. at 248.  "This requires evidence, not speculation."  *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999).  The Court must assume the truth of direct evidence set forth by the opposing party.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992).  However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom.  *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987).  Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party."  *American International Group*, 926 F.2d at 836-37.  In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

---

[4]  On September 14, 2021, Plaintiff filed a Notice of Partial and Conditional Settlement, stating that Plaintiff and SAI had "reached a settlement resolving all of the issues between them in this matter, as well as in the related case" of *Dan Raines v. Simon's Agency, Inc.*, Case No. CV 21-3046-JFW (JCx).  *See* Docket No. 69.  As a result, the only claim remaining in this action is Plaintiff's first claim for relief for violation of the CROA alleged against Enrich.

Initials of Deputy Clerk __sr__

### III.     Discussion

In his Motion, Plaintiff argues that Enrich violated the CROA "in at least six different ways." Specifically, Plaintiff argues that Enrich has violated the CROA by: (1) failing to include language required by 15 U.S.C. § 1679c(a); (2) failing to provide Plaintiff with a notice that complied with the formal requirements of 15 U.S.C. § 1679c(b); (3) failing to comply with the requirements of 15 U.S.C. § 1679d(a), 15 U.S.C. § 1679d(b), and 15 U.S.C. § 1679e(a) regarding refunds and cancellation of a credit repair contract; (4) failing to provide a full and detailed description of the services to be provided or estimates of the date by which such services would be completed in violation of 15 U.S.C. § 1679d(b); (5) failing provide Plaintiff with a copy of the contract and other materials Enrich had Plaintiff sign in violation of 15 U.S.C. § 1679e(c); and (6) collecting $500 from Plaintiff on a credit repair contract that was void pursuant to 15 U.S.C. § 1679f(a) and by hiring a collection company to blemish Plaintiff's credit based upon a void and unenforceable contract in violation of 15 U.S.C. § 1679f(b).  In its Opposition, Enrich argues that Plaintiff's Motion is premature and that there are numerous genuine issues of material fact that preclude the entry of summary judgment.  Enrich also argues that it has fully complied with the CROA.

### A.     Enrich's Rule 56(d) Request is Denied

In its Opposition, Enrich states that Plaintiff's Motion "is premature in that Plaintiff DAN RAINES has failed to provide substantive responses to Defendant ENRICH FINANCIAL INC.'s discovery requests Set Two and Defendants had no opportunity to review the final verified deposition transcripts to include excerpts and citations in this Opposition."  Opposition, 6:22-7:1. Although Enrich does not cite to Rule 56(d), the Court will consider Enrich's request under Rule 56(d).  Pursuant to Rule 56(d), "[i]f a nonmovant shows by *affidavit* or *declaration* that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it; [ ] allow time to obtain affidavits or declarations or to take discovery; or [ ] issue any other appropriate order."  Fed. R. Civ. P. 56(d) (emphasis added).

A party invoking Rule 56(d) "bears the burden of showing 'what facts [it] hopes to discover to raise a material issue of fact.'"  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (quoting *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1306, n.1 (9th Cir. 1986)).  "Compliance with [Rule 56(d)] requires more than a perfunctory assertion that the party cannot respond because it needs to conduct discovery.  In that regard, references in memoranda and declarations positing a need for discovery do not constitute a proper motion under [Rule 56(d)].  Rather, that rule requires affidavits setting forth with particularity: (1) why the party opposing summary judgment cannot respond; (2) the particular facts that the party reasonably expects to obtain in further discovery; and (3) how the information reasonably expected from its proposed discovery requests could be expected to create a genuine issue of material fact that would defeat the summary judgment motion."  *Adams v. Allstate Insurance Co.*, 187 F. Supp. 2d 1207, 1213 (C.D. Cal. 2002); *see also Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) ("A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.").  "The party seeking additional discovery also bears the burden of showing that the evidence sought exists."  *Terrell*, 935 F.2d at 1018.  "Failure to comply with the requirements of [Rule 56(d)] is a proper ground for denying discovery and proceeding to summary judgment."  *Brae Transportation, Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).

Initials of Deputy Clerk _sr_

Denial of relief pursuant to Rule 56(d) is proper if the movant fails to comply with the requirements of Rule 56(d) or if the movant has failed to conduct discovery diligently.  *See, e.g., United States v. Kitsap Physicians Service*, 314 F.3d 995, 1000 (9th Cir. 2002) ("Failure to comply with [the requirements of Rule 56(d)] is a proper ground for denying relief"); *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion"); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) ("A movant cannot complain if it fails diligently to pursue discovery before summary judgment"); *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372 (9th Cir. 1985) (ruling that district court properly denied the plaintiffs' Rule 56(d) motion because the "[f]ailure to take further depositions apparently resulted largely from plaintiffs' own delay"); *Adams*, 187 F. Supp. 2d at 1213 *(citing Stitt v. Williams*, 919 F.2d 516, 526 (9th Cir. 1990)) ("Moreover, even where these prerequisites are met, a court may refuse to continue hearing a summary judgment motion where a party has had the opportunity to conduct discovery in a diligent fashion, but failed to do so").

In this case, Enrich has failed to demonstrate that it is entitled to relief pursuant to Rule 56(d).  Enrich has failed to demonstrate that it has been diligent in conducting discovery.  The Court's Standing Order specifically instructs parties to "actively conduct discovery before the Fed.R.Civ.P. 26(f) conference because at the Scheduling Conference the Court will impose tight deadlines to complete discovery."  Standing Order (filed August 24, 2020; Docket No. 9), ¶ 4(b).  Indeed, in the Scheduling and Case Management Order ("CMO") filed on November 3, 2020 (Docket No. 35), the Court set May 17, 2021 as the discovery cut-off date.  On May 3, 2021, pursuant to a Stipulation, the Court continued the discovery cut-off date from May 17, 2021 to August 16, 2021.  *See* Docket No. 45.  However, despite the Court's very clear warning in its Standing Order and the Court's Order extending the discovery cut-off date by three months, Enrich did not depose Plaintiff until August 16, 2021, the discovery cut-off date.  Enrich now complains that it did not have enough time to receive and review Plaintiff's deposition transcript before it was required to file its Opposition on August 23, 2021.  However, it was Enrich's decision to wait until the last day of the discovery period to depose Plaintiff and, thus, Enrich is responsible for the consequences of that decision.  Similarly, Enrich complains that Plaintiff failed to provide adequate responses to written discovery propounded by Enrich.  However, discovery in this action has been closed for over four weeks, and it was Enrich's decision to delay propounding discovery which resulted in Enrich's inability to bring a motion to compel.  *See* CMO, ¶ 2 ("Any motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted").

There is a critical distinction between cases where a party opposing a motion for summary judgment requests a continuance of that motion to conduct additional discovery in one discreet area that is relevant to the disposition of the motion and cases such as this where Enrich opposes Plaintiff's Motion on the grounds that, despite the fact that discovery has closed, Enrich is entitled to more time in which to conduct discovery because Enrich decided to wait until the last possible moment to propound discovery that Enrich considers essential to its case.  In this case, the Court finds that Enrich had ample opportunity to conduct discovery but for some unexplained reason, Enrich decided to wait to conduct critical discovery until the end of the discovery phase of this action.

Accordingly, for all of these reasons, Plaintiff's Rule 56(d) Request is denied.

Initials of Deputy Clerk _sr_

**B.      Plaintiff Is Entitled to Judgment on His Claim for Violation of the CROA**

      **1.      The CROA**

The CROA, 15 U.S.C. §§ 1679 *et seq.*, was passed in 1996 in response to the growing trend whereby "credit repair" companies used abusive and misleading practices to take advantage of debtors seeking to improve their credit records.  *See* 15 U.S.C. § 1679(a); *see also Fed'l Trade Comm'n v. Gill*, 265 F.3d 944, 947 (9th Cir. 2001).  The statute was meant "to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations."  15 U.S.C. § 1679(b).  In support of those purposes, Congress developed a scheme to subject "credit repair organizations," or "CROs," to certain disclosure requirements in dealing with consumers and to prohibit CROs from engaging in deceptive practices that are potentially injurious to the public.  *See* 15 U.S.C. §§ 1679b–1679e.  The CROA defines a "credit repair organization" to include:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of – (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) . . .

15 U.S.C. § 1679a(3)(A).

In this case, it is undisputed that Enrich is a credit repair organization, and that the CROA applies to Enrich.

      **2.      Enrich Violated the CROA and, as a Result, the Agreement is Void**

The CROA requires that a contract for credit repair services between a consumer and a credit repair organization must be in writing and must include several mandatory terms and disclosures.  If the contract does not comply with these provisions of the CROA, it is void and unenforceable.  *See* 15 U.S.C. § 1679f(c) ("Any contract for services which does not comply with the applicable provisions of this subchapter – (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person"); *see also Taylor-Burns v. AR Resources, Inc.*, 268 F.Supp. 3d 592 (S.D.N.Y. 2017) (holding that contract for credit repair services was void and unenforceable because the contract did not comply with provisions of the CROA, including 15 U.S.C. § 1679c and 15 U.S.C. § 1679d).

In this case, the Court concludes that, for the reasons detailed below, the Agreement fails to comply with several provisions of the CROA.  As a result, the Court also concludes that the

Initials of Deputy Clerk  _sr_

Agreement is void and unenforceable.[5]  15 U.S.C. § 1679c(1)-(2).

### a.     15 U.S.C. § 1679c(a) and 15 U.S.C. § 1679c(b)

Plaintiff argues that Enrich violated the CROA by failing to provide Plaintiff with the written disclosures required pursuant to 15 U.S.C. § 1679c(a).  Plaintiff also argues that Enrich violated the CROA by failing to provide those written disclosures in a separate document as required by 15 U.S.C. § 1679c(b).  Enrich argues that it has fully complied with Section 1679c(a) and Section 1679c(b).

Section 1679c(a) of the CROA provides that:

Any credit repair organization shall provide any consumer with the following written statement before any contract or agreement between the consumer and the credit repair organization is executed:

"**Consumer Credit File Rights Under State and Federal Law**

"You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

"You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

"You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

---

[5]  Because the Court concludes that Enrich has violated the CROA and the Agreement is void and unenforceable because it fails to comply with the CROA, the Court does not need to address each violation alleged by Plaintiff.

Initials of Deputy Clerk  _sr_

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:

"**The Public Reference Branch**

"**Federal Trade Commission**

"**Washington, D.C. 20580**".

In addition, Section 1679c(b) requires that "[t]he written statement required under [Section 1679c(b)] shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

In this case, the Court concludes that Enrich has violated the CROA by failing to include all of the written disclosures required by Section 1679c(a) in the Agreement.  Although some of the required disclosures are included in the Agreement (on the second page, entitled "CONSUMER CREDIT FILE RIGHTS UNDER STATE AND FEDERAL LAW"), the Agreement does not include all of the required disclosures.  Specifically, the Agreement does not include the following required disclosures: (1) "Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur"; and (2) "The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact: **The Public Reference Branch[,] Federal Trade Commission [,] Washington, D.C. 20580.**"

In addition, many of the disclosures that are included in the Agreement are incomplete.  For example, the disclosure advising the consumer of the right to obtain a copy of his credit report from a credit bureau fails to state that the consumer is "entitled to receive a free copy of [his] credit report if [he is] unemployed and intend[s] to apply for employment in the next 60 days, if [he is] a recipient of public welfare assistance, or if [he has] reason to believe that there is inaccurate information in [his] credit report due to fraud."  Similarly, although Section 1679c(a) requires a disclosure that states "[y]ou have a right to sue a credit repair organization that violated the Credit Repair Organization Act.  This law prohibits deceptive practices by credit repair organizations," the

Agreement merely provides that "[y]ou have a right to sue a credit services organization if it misleads you."  However, the disclosure does not notify consumers of the law that governs the transaction with Enrich – the CROA.  Indeed, there is absolutely no mention of the CROA in the Agreement.  Moreover, the disclosure fails to inform consumers that they can sue Enrich for violations of the CROA that do not require evidence that Enrich engaged in misleading or deceitful conduct.  *See, e.g., Rannis v. Fair Credit Lawyers, Inc.*, 489 F.Supp. 2d 1110, 1118 (C.D. Cal. 2007) ("While many of the cases discussing this statute interpret section 1679b(a), which relates generally to the prohibition of credit repair organizations' deceptive, misleading, or fraudulent statements or actions, violations of other provisions of the section are still violations.  The statute does not require any such fraudulent activities to serve as a predicate for other violations under the statute").

The Court concludes that Enrich has also violated the CROA by failing to include the Section 1679c(a) written disclosures in "a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."  The Section 1679c(a) disclosures are found on the second page of the Agreement, not in a separate document.  In addition, the second page of the Agreement contains other terms of the Agreement, including certain warranties consumers purportedly make to Enrich and consumers' agreement to indemnify Enrich "against any claims made against" it "for providing credit repair services."

> **b.     15 U.S.C.  § 1679d(a), 15 U.S.C. § 1679d(b), and 15 U.S.C. § 1679e(a)**

Plaintiff argues that Enrich violated the CROA because the terms of the Agreement do not comply with 15 U.S.C.  § 1679d(a), 15 U.S.C. § 1679d(b), and 15 U.S.C. § 1679e(a).  Enrich argues that it has fully complied with those sections.

Section 1679d(a) provides that:

No services may be provided by any credit repair organization for any consumer –

(1) unless a written and dated contract (for the purchase of such services) which meets the requirements of subsection (b) has been signed by the consumer; or

(2) before the end of the 3-business-day period beginning on the date the contract is signed.

Section 1679d(b) provides that:

No contract referred to in subsection (a) meets the requirements of this subsection unless such contract includes (in writing) –

(1) the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person;

(2) a full and detailed description of the services to be performed by the credit repair

Initials of Deputy Clerk   sr

organization for the consumer, including –

> (A) all guarantees of performance; and
> (B) an estimate of –
>
>> (i) the date by which the performance of the services (to
>> be performed by the credit repair organization or any
>> other person) will be complete; or
>> (ii) the length of the period necessary to perform such
>> services;

(3) the credit repair organization's name and principal business address; and

(4) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

Section 1679e(a) provides that:

Any consumer may cancel any contract with any credit repair organization without penalty or obligation by notifying the credit repair organization of the consumer's intention to do so at any time before midnight of the 3rd business day which begins after the date on which the contract or agreement between the consumer and the credit repair organization is executed or would, but for this subsection, become enforceable against the parties.

In this case, the Court concludes that Enrich violated the CROA because the Agreement fails to comply with Section 1679d(a) and Section 1679e(a).  The third page of the Agreement, which is entitled "OFFICIAL AGREEMENT," provides that "[t]he CLIENT understands that they may not cancel the original amount agreed to pay, due to [Enrich's] immediate action towards the CLIENT's credit repair."  In addition, the eighth page of the Agreement, which is entitled Credit Card/Refund policy, states that "PURCHASER understands and agrees that this charge is final and strictly a NON REFUNDABLE purchase from Enrich Financial and Service has been rendered already!"  Thus, pursuant to the terms of the Agreement, Enrich renders credit repair services to consumers – and charges consumers for those services – prior to the signing of a contract that complies with Section 1679d(b) and prior to the three business day waiting period provided for in Section 1679d(a)(2).  Moreover, pursuant to the terms of the Agreement, Enrich informs consumers – in violation of Section 1679e(a) – that the amount due under the Agreement is "NON REFUNDABLE" and cannot be cancelled.  Enrich argues that it has complied with the CROA because the eighth page of the Agreement states that "I understand that I have 5 days to Cancel the service and request a full money back [*sic*] from the date of signing the contract."  However, that provision clearly conflicts with the provisions of the Agreement that state that the charges pursuant to the Agreement are final and "strictly a NON REFUNDABLE purchase."

In addition, the Court concludes that Enrich violated the CROA because the Agreement fails

Initials of Deputy Clerk _sr_

to comply with Section 1679d(b) by failing to provide "a full and detailed description of the services to be performed by the credit repair organization for the consumer," including "guarantees of performance," "date by which the performance of services . . . will be complete," and "the length of the period necessary to perform such services."  The Agreement provides (on page three) that "[t]he terms of this agreement shall begin on 3/17/16 and terminate on, 3/17/17 unless earlier terminated or extended."  The Agreement also provides (on page three) that "CLIENT agrees to pay a fee total of $10,000 dollars [*sic*] for credit repair services."  However, the Agreement fails to specify what services will be provided for that fee.  The Agreement provides (on page three) that "an initial first work fee of $500" will be billed to the consumer for "setup and analysis" and that:

> After the initial setup has been completed, [Enrich] will audit the Client's credit reports and develop a plan to delete, correct, or change inaccurate, unverifiable, and obsolete items under current federal and state law during this contract.  After each month [*sic*] services have been fully performed, a fee of **$500** for an individual will be due, and that this fee is for all costs and fees associated with the previous month's Services.  This process will continue until Client cancels service.  The Client understands that the monthly fee includes the continuing analysis/audit of up to three credit bureau reports[,] all correspondence associated with the credit improvement process, the review for changes requested by the Client to the Client's credit reports as a result of contacts made on the Client's behalf with each applicable credit bureau, creditor or public record holder, phone consultations with client and the continuing planning and creation of documents for the purpose of credit report improvement.

However, the Agreement fails to specify what services are included in the initial "setup and analysis" or what happens if the "audit" reveals that there are no "inaccurate, unverifiable, [or] obsolete items" on a consumer's credit report.  Moreover, the Agreement provides only a vague and general description of the monthly services provided, instead of the full and detailed description required under Section 1679d(b).  The Agreement also fails to provide any estimate of the length of time these services may be necessary to repair a consumer's credit.  Furthermore, the Agreement fails to explain how the total fee due under the Agreement is calculated at $10,000 if Enrich charges the consumer $500 per month during the one year term ($500 x 12 = $6,000).  In addition, the one year term of the Agreement is contradicted by the third page of the Agreement, which states that the Agreement "will continue until Client cancels service."  Indeed, the Agreement, in addition to failing to comply with Section 1679d(b) (and other provisions of the CROA), is simply confusing and self-contradictory, and in no way meets Congress's objective in enacting the CROA "to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such service."[6]

### C.    Enrich Failed to File a Proposed Statement of Decision

---

[6]  An additional example of the confusing nature of the Agreement is the statement that "[t]his agreement shall be subject to the general terms and conditions related to the credit repair service provided by" Enrich.  However, nowhere in the ten page Agreement is there a section entitled "Terms and Conditions."

Initials of Deputy Clerk __sr__

The Court's Standing Order provides in relevant part:  "Within two days of the deadline for filing the Reply, each party shall lodge a Proposed Statement of Decision, which shall contain a statement of the relevant facts and applicable law with citations to case law and the record." Standing Order, § 5(f).  The deadline for filing the Reply was August 30, 2021, and, thus, the deadline for filing the Proposed Statement of Decision was September 1, 2021.  *See* Local Rule 7-10.  Enrich failed to timely file and still has not filed the required Proposed Statement of Decision.

Pursuant to Local Rule 7-12, "[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . . ."  In addition, the Standing Order expressly provides that the "[f]ailure to lodge the Proposed Statement will result in the denial or granting of the motion."  Standing Order, § 5(f).  Accordingly, pursuant to Local Rule 7-12 and the Standing Order, Plaintiff's Motion is granted on the alternative ground that Enrich failed to file a Proposed Statement of Decision.

## IV.    Conclusion

For all the foregoing reasons, Plaintiff's Motion is **GRANTED**.

IT IS SO ORDERED.

Initials of Deputy Clerk   _sr_